UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>RACHEL DUNCANSON,<br><br>   Debtor<br>_____<br><br>RACHEL DUNCANSON,<br>   Plaintiff<br>vs.<br><br>BANK OF NORTH DAKOTA,<br>UNITED STATES DEPARTMENT<br>OF EDUCATION,<br>   Defendants | Chapter 7<br><br>Bankruptcy No. 20-00884<br><br><br><br><br><br><br>Adversary No. 20-09045 |

**OPINION AND ORDER ON DEBTOR'S MOTION TO RECONSIDER**

The matter before the Court is Debtor's Motion to Reconsider (Doc. 86). Debtor asks the Court to reconsider its July 19, 2024, ruling on the dischargeability of her student loans (Doc. 84). A telephonic hearing was held on September 20, 2024. Attorney Wilford L. Forker appeared for Debtor. Attorney Martin McLaughlin appeared for the United States Department of Education ("DOE"). Attorney C. Anthony Crnic appeared for Bank of North Dakota. The Court took the matter under advisement on the papers submitted. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

**I. BACKGROUND**

Debtor filed her Chapter 7 bankruptcy petition on July 14, 2020. On September 18, 2020, she filed this adversary proceeding to determine the dischargeability of two student loans. On July 19, 2024, the Court found that one of these loans—owed to the Bank of North Dakota—was dischargeable under 11 U.S.C. § 523(a)(8). The second loan, owed to the DOE, was non-dischargeable. Debtor filed a Motion to Reconsider this ruling on July 23, 2024. In support of her Motion, Debtor asserts that a "substantial basis for this [C]ourt's determination that the student loan to the Department of Education was non-dischargeable was because of the SAVE plan." Just one day before this Court rendered its decision as to dischargeability, the Eighth Circuit Court of Appeals stayed implementation of the SAVE Plan in full. Because this option is no longer available to the Debtor, she asks the Court to reconsider its ruling and determine that the DOE loan is dischargeable.

## II.   ANALYSIS

When a motion to reconsider is made in response to a final order, such as here, it is construed as a motion under Rule 59(e) of the Federal Rules of Civil Procedure. Schoffstall v. Henderson, 223 F.3d 818, 827 (8th Cir. 2000). See also Quartana v. Utterbeck, 789 F.2d 1297, 1300 (8th Cir. 1986) ("Any motion that draws into question the correctness of the judgment is functionally a motion under Civil Rule 59(e), whatever its label."). Motions filed pursuant to this rule are

2

intended to "serve a limited function of correcting manifest errors of law or fact or to present newly discovered evidence." Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998) (quoting Hagerman v. Yukon Energy Corp., 839 F.2d 407, 413 (8th Cir. 1988)) (internal quotations omitted). A motion under this rule may not be used "to relitigate old issues, present previously available evidence, or present new legal theories and argument that a party failed to present before judgment." In re Robert J. Ambruster, Inc., 653 B.R. 461, 468 (Bankr. E.D. Mo. 2023) (citing Ryan v. Ryan, 889 F.3d 499, 507 (8th Cir. 2018)).

Debtor argues that the Eighth Circuit's order is newly discovered evidence that warrants reconsideration of the Court's July 19, 2024, Ruling. To be entitled to relief based upon newly discovered evidence, Debtor must show the following:

> (1) that the evidence was discovered after the court's order, (2) that the movant exercised diligence to obtain the evidence before entry of the order, (3) that the evidence is not merely cumulative or impeaching, (4) that the evidence is material, and (5) that the evidence would probably have produced a different result.

Ryan, 889 F.3d at 508 (citing Miller v. Baker Implement Co., 439 F.3d 407, 414 (8th Cir. 2006)). The first four elements warrant little discussion here. Debtor has shown that the stay was discovered after the Court's order and that she exercised diligence to obtain the evidence prior to the entry of that order. This Court's Ruling on the Dischargeability of Debtor's Student Loans came one day after the Eighth

3

Circuit granted the emergency motion for administrative stay, halting implementation of the SAVE Plan. Debtor's Motion to Reconsider was filed just four days later, on July 23, 2024. The Court is also satisfied that the evidence is not merely cumulative or impeaching and is material in that the availability of the SAVE Plan was of consequence in this Court's earlier dischargeability ruling.

The fifth element, however, has not been satisfied. Debtor has not shown that this new evidence, had it been before the Court, would have produced a different result. While the Court did consider the availability of the SAVE Plan, it was only a small part of the Court's totality of the circumstances analysis. The Court first considered the Debtor's past, present, and reasonably reliable future financial resources, finding that those resources were limited. Next, the Court looked to the Debtor's expenses, finding them reasonable and necessary to maintain a minimal standard of living. Based on her monthly income of about $4,920 per month, the Court calculated that Debtor would be left with $995 of discretionary income each month. This calculation weighed against the discharge of both loans but supported discharge of at least one. Finally, the Court considered other relevant facts and circumstances that could impact the Debtor's ability to pay back her student loans—her limited funding for retirement, her mental health struggles, and the availability of an Income Based Repayment Plan ("IBRP").

In considering IBRPs, the Court considered the likelihood that the Debtor would make significant payments under the plan and the additional hardships that such a plan could impose. Those additional hardships included the likely growth of the debt over the course of the plan, the effect of the debt on the Debtor's ability to obtain credit in the future, the mental and emotional impact of allowing the debt to continue growing, and the likely tax consequences when the debt is ultimately canceled. The Court discussed the SAVE Plan here, specifically highlighting the fact that the Plan would eliminate the accrual of interest if payments were made. However, the Court noted that if neither loan was dischargeable and Debtor was subsequently approved for the SAVE Plan, she would not make a significant repayment on the DOE loan and that the amount forgiven would come with a hefty tax bill. These factors weighed in favor of the discharge of at least one of the loans.

With these considerations in mind, the Court was left to determine which of the loans should be discharged. In doing so, the Court considered Debtor's good faith payments made prior to her bankruptcy filing. Debtor had consistently paid towards the Bank's loan since her graduation in 2010 up until her loan consolidation in 2020. In contrast, Debtor had only made approximately $1,300 worth of payments to the DOE loan since 2000. For this reason, the Court found that the Bank's loan should be discharged. To bolster this decision, the Court provided that it "also favor[ed] the DOE loan in this case because the SAVE Plan

5

that is available to Debtor would keep interest on the loan principal from accruing as long as she makes consistent payments." Had the Court not considered the SAVE Plan, it would have reached the same conclusion based on Debtor's lack of good-faith payments towards the DOE loan. The availability of the SAVE Plan, while it was a consideration, was not a deciding factor. In addition, while the implementation of the SAVE Plan has been stayed pending litigation in lower courts, it may still be an option for the Debtor in the future. As the DOE indicated in its Response to Debtor's Motion to Reconsider, the Department of Justice has continued to litigate the plan in an effort to preserve its availability.

The Court thus finds that Debtor has failed to show that evidence of the Eighth Circuit's stay order "would probably have produced a different result," and is therefore not entitled to the requested relief.

### III.  CONCLUSION

For the foregoing reasons, Debtor's Motion to Reconsider is **DENIED**.

Ordered:

January 6, 2025

Thad J. Collins
Chief Bankruptcy Judge